UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSTAFA ABDALLAH,<br><br>    Plaintiff,<br><br>    v.<br><br>XYBION CORPORATION,<br><br>    Defendant. | Case No. 25-cv-04314-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 6 |

## I.     INTRODUCTION

Plaintiff Mustafa Abdallah brings this employment discrimination case against his former employer, Xybion Corporation ("Xybion"), asserting that he was discriminated against based on his race and religion, including when Xybion terminated him. He further alleges that his termination was in retaliation for protesting Xybion's unlawful acts. Xybion brings a Motion to Dismiss ("Motion") seeking dismissal of all of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing set for August 13, 2025 pursuant to Civil Local Rule 7-1(b). The Case Management Conference set for the same date is continued to October 29, 2025 at 2:00 p.m. by Zoom webinar (id. 161 926 0804, password 050855). For the reasons stated below, the Motion is GRANTED.[1]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. The Complaint

Plaintiff's employment with Xybion began around May 2022. Compl. ¶ 11. His position was Executive Director, Quality/Compliance Services, and his duties "included sales, managing quality control for Defendant's clients, participating in project work for clients, and advising clients." *Id.* He also managed a team of 5-10 consultants. *Id.* He worked remotely, most recently from Fremont, California. *Id.*

Plaintiff's sales duties "often entailed selling [Xybion's] clients and prospective clients on retaining [Xybion's] services for their quality and compliance consulting needs[,]" which included "bringing in remote and/or onsite project managers and validation engineers for limited periods of time during the duration of their projects." *Id.* ¶ 12. "Once Plaintiff secured a client's agreement to utilize [Xybion] for these personnel needs, Plaintiff worked with [Xybion's] Human Resources/Recruitment department to secure the necessary personnel." *Id.* ¶ 13.

"Plaintiff is an Arab American man of Palestinian descent." *Id.* ¶ 14. "Plaintiff also practices Islam and identifies as a Muslim." *Id.* Plaintiff's supervisor, Kamal Biswas is "Indian" and he is not Muslim. *Id.* ¶ 15. Plaintiff alleges that Xybion "employs disproportionately few individuals of Arab American and Muslim backgrounds, and disproportionately high numbers of individuals with Indian and non-Muslim backgrounds." *Id.* According to Plaintiff, Xybion "discriminated against [him] based on [his] racial background, Arab, and his religion, Islam." *Id.* ¶ 16. He further alleges that Xybion "negligently and intentionally failed to stop the discrimination." *Id.* In particular, Plaintiff alleges that Xybion discriminated against him by "regularly imposing sales expectations upon Plaintiff that were higher than the sales expectations placed upon Plaintiff's colleagues who performed the same or similar work." *Id.* ¶ 17. Although "Plaintiff requested an explanation from Mr. Biswas regarding his higher sales expectations, . . . Mr. Biswas did not specify any legitimate reason or justification for the discriminatory expectations." *Id.* Plaintiff also alleges that Xybion discriminated against him by "eventually terminating his employment." *Id.* ¶ 18.

According to Plaintiff, "[t]hroughout [his] employment with [Xybion], [he] performed his

1  duties competently and professionally." *Id.* ¶ 19.  Plaintiff further alleges that he "was often the top or one of the top performers in sales revenue amongst his [Xybion] colleagues . . . ."

Plaintiff alleges that Xybion staffed client projects largely by retaining "external consultants" for the projects and that it "frequently assigned unqualified and inexperienced consultants to positions in an effort to minimize costs and increase profit margin." *Id.* ¶ 20. Plaintiff alleges that he "opposed this practice[,]" which "explicitly contradicted representations Defendant pressured Plaintiff and his colleagues to make to Defendant's clients regarding the experience, qualifications, and credentials of the assigned personnel." *Id.* ¶ 21.  Plaintiff alleges that he "frequently expressed disagreement with this practice to Mr. Biswas" and that "Mr. Biswas' consistent response to Plaintiff was that profit margins were Defendant's primary concern in [its] personnel placement decisions and that Plaintiff needed to focus his efforts on selling." *Id.* According to Plaintiff, Xybion "intentionally" "perpetrated [the] fraudulent practice" of  telling clients their needs would be met by "highly-qualified and experience individuals" to secure contracts and then placing "under- qualified and relatively inexperienced consultants and employees" on the projects.  *Id.* ¶ 22.

Plaintiff alleges that he "consistently opposed the above-specified practice by engaging in efforts with [Xybion's] HR/Recruitment Department, and with Mr. Biswas, and others to ensure that the consultants assigned to projects were qualified for their assignments." *Id.* ¶ 23. Plaintiff alleges that Xybion "retaliated against [him] based upon [his] opposition to [its] fraudulent practices." *Id.* ¶ 24.

In late summer or early fall of 2024, "Plaintiff was engaged in discussions with a potential client located in Mumbai, India, a large pharmaceutical company, about performing a data  integrity audit on one of their manufacturing facilities." *Id.* ¶ 25.  According to Plaintiff, "[t]his client was concerned about scrutiny from government agencies, including the Food and Drug Administration." *Id.*  Plaintiff told the company that Xybion "could deliver to the client qualified and experienced consultants that could fill its needs[]" and was able to secure the company as a client. *Id.* He also "discussed this sale with Mr. Biswas and specified that it was necessary to hire qualified and experienced consultants and that Defendant could not 'go cheap' in procuring the

3

consultants." *Id.* ¶ 26. Nevertheless, Xybion "hired highly unqualified and minimally experienced individuals and assigned them to the Mumbai client." *Id.*

"Plaintiff travelled to Mumbai with the unqualified consultants in September of 2024 to meet with the client and to potentially begin work for the client." *Id.* ¶ 27. He "admonished the consultants in advance of their meeting the client that it was important to be forthright and honest with the client about their qualifications if and when the client asked." *Id.* According to Plaintiff, the client did question the consultants "about their experience and qualifications" and "within 48 hours the client cancelled the contract with [Xybion], citing the unqualified consultants [Xybion] assigned to the project." *Id.* ¶ 28.

In February 2025, Plaintiff informed Defendant's Executive Vice President and CFO, Steven Porfano, that the Mumbai client cancelled the contract because the consultants [Xybion] placed were inadequately experienced for the project." *Id.* ¶ 30. "Mr. Porfano responded that he 'had no idea they terminated because our team was not satisfactory.'" *Id.* Plaintiff alleges that "[d]ays later, on February 7, 2025, [Xybion] terminated Plaintiff's employment in retaliation for his opposition to Defendant's fraudulent practices." *Id.* ¶ 31. According to Plaintiff, Xybion's termination of his employment "was also predicated upon the Company's discriminatory animus against Plaintiff, a Muslim Arab American." *Id.*

Based on these factual allegations, Plaintiff asserts the following claims: 1) discrimination based on race in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a) (Claim One); 2) discrimination based on religion in violation of FEHA, Cal. Gov't Code § 12940(a) (Claim Two); 3) failure to prevent discrimination and retaliation in violation of FEHA, Cal. Gov't Code § 12940(j), (k) (Claim Three); 4) retaliation for opposing an unlawful act in violation of California Government Code § 1102.5 (Claim Four); and 5) wrongful termination in violation of public policy based on discrimination in violation of FEHA and whistleblower retaliation under Section 1102.5 (Claim Five).

### B. Contentions of the Parties

In the Motion, Xybion asserts that all of Plaintiff's FEHA claims (Claims One through Three) are insufficiently pled because Plaintiff has not plausibly alleged that his race or religion

4

1    were motivating factors for his termination. Xybion argues further that Plaintiff's retaliation claim
2    under Section 1102.5 (Claim Four) must also be dismissed because Plaintiff does not identify any
3    federal or state law, rule, or regulation that he believed Xybion was violating or allege facts
4    showing that he opposed Xybion's unlawful conduct.  Finally, Xybion argues that Plaintiff's claim
5    for wrongful termination in violation of public policy must be dismissed because that claim must
6    be "tethered" to a fundamental policy established by a constitutional, statutory or regulatory
7    provision and Plaintiff, having failed to state a claim under FEHA and Section 1102.5, also fails to
8    state a claim for wrongful termination in violation of public policy.

9          In his Opposition, Plaintiff rejects Xybion's contention that he has not plausibly alleged
10   that he was discriminated against based on his race and religion, pointing to the allegation in his
11   complaint that Xybion imposed higher sales quotas on him than on other similarly situated
12   employees.  With respect to the Section 1102.5 retaliation claim, Plaintiff asserts that he
13   adequately alleged that he disclosed and refused to participate in Xybion's unlawful conduct.  He
14   also argues that he sufficiently alleged a violation of a statute or rule because it is sufficient to
15   allege opposition to a fraudulent business practice to state a claim under Section 1102.5.  Because
16   his FEHA and Section 1102.5 claims are adequately pled, Plaintiff contends, he has also
17   adequately pled his claim for wrongful termination in violation of public policy.

18         In its Reply, Xybion rejects Plaintiff's reliance on the allegation in the complaint that
19   higher sales quotas were imposed upon him than were imposed on other employees to establish a
20   discriminatory motive with respect to his FEHA claims.  It argues that Plaintiff's allegation about
21   the higher sales quota is insufficient because it is conclusory and fails to identify the race or
22   religion of the employees who were given lower quotas.  It further contends this allegation falls
23   short because Plaintiff does not allege that Plaintiff failed to meet these higher quotas or that he
24   was terminated on that basis, instead alleging that Plaintiff was a top performer with respect to
25   sales. Xybion reiterates its challenges to the Section 1102.5 claim, arguing that the claim fails
26   because Plaintiff does not allege any facts showing that he disclosed or refused to participate in
27   illegal activity.  Xybion argues further, as it did in the Motion, that a section 1102.5 claim requires
28   the plaintiff to identify a specific statute, rule or regulation they believe was violated, which

1  Plaintiff has not done.

## III. ANALYSIS

### A. Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 570).

### B. Whether FEHA Claims Are Sufficiently Pled

To establish a prima facie case of discrimination under FEHA, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (internal quotations and citations omitted) (prima facie elements of Title VII discrimination claim); *see also Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA."). Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plausibly allege these elements. Xybion argues that the fourth element of Plaintiff's discrimination claims (Claims One and Two) is not adequately alleged and therefore, that all three of his FEHA claims must be dismissed for failure to state a claim. The Court agrees.

As a preliminary matter, Xybion does not challenge Plaintiff's allegations with respect to the first three elements of his FEHA discrimination claims, which the Court finds to be sufficient. First, Plaintiff has alleged that he is a member of a protected class by alleging that he is an "Arab American man of Palestinian descent" and "identifies as Muslim." Compl. ¶ 14. Second, Plaintiff alleges that he "performed his duties competently and professionally" and "was often the top or one of the top performers in sales revenue amongst his colleagues." *Id.* ¶ 19. These allegations raise a plausible inference with respect to the second element of Plaintiff's FEHA discrimination claim that he was qualified for his position. Third, Plaintiff has alleged two adverse employment actions, namely, that he was subjected to a higher sales quota than similarly situated coworkers and that he was terminated. *Id.* ¶¶ 17-18; *see also* Opposition at 5 ("Here, Plaintiff alleges two adverse employment actions, 1) termination and 2) Defendant's imposition of sales expectations upon Plaintiff that were higher than the sales expectations placed upon similarly situated colleagues that were neither Muslim or of Arab descent.").

As to the fourth element, Plaintiff relies on the allegations in paragraph 17 of his complaint to raise an inference of discriminatory intent but those allegations fall short. In particular, Plaintiff

7

1    alleges that Xybion "impos[ed] sales expectations upon Plaintiff that were higher than the sales
2    expectations placed upon Plaintiff's colleagues who performed the same or similar work."  Compl.
3    ¶ 17. In order to establish that the fourth element of the prima facie case is met, however, Plaintiff
4    must show that other employees *outside of the protected class* were treated more favorably than
5    Plaintiff.  Plaintiff does not allege that the colleagues whose sales quotas were lower than his were
6    either non-Arab or non-Muslim and therefore outside of the protected class.  Furthermore,
7    although Xybion allegedly "employs disproportionately few individuals of Arab American and
8    Muslim backgrounds[,]" Plaintiff does not allege that he was the *only* Arab American or Muslim
9    employee.  Consequently, it cannot be inferred that the colleagues with lower sales quotes
10   referenced in the complaint were either non-Arab or non-Muslim.  Because Plaintiff has not
11   adequately alleged discrimination under FEHA (Claims One and Two), he also does not state a
12   claim for failure to prevent discrimination or retaliation (Claim Three).  Nor can he state a claim
13   for wrongful discrimination in violation of public policy (Claim Five) based on his FEHA claims.

### C.    Whether Retaliation under Section 1102.5 is Sufficiently Pled

15    "Section 1102.5 provides whistleblower protections to employees who disclose
16   wrongdoing to authorities." *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 709
17   (2022). As relevant here, Section 1102.5 prohibits retaliation against an employee for: 1)
18   "disclosing information . . . . to a person with authority over the employee or another employee
19   who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the
20   employee has reasonable cause to believe that the information discloses a violation of state or
21   federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation,
22   regardless of whether disclosing the information is part of the employee's job duties" (§ 1102.5,
23   subd. (b))[;] and 2) "refusing to participate in an activity that would result in a violation of state or
24   federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation"
25   (§ 1102.5(c)).  Xybion contends Plaintiff has not sufficiently alleged that he "disclos[ed]
26   information" under subdivision b or that he "refused to participate in" illegal activity under
27   subdivision c.  It further contends the Section 1102.5 claim is insufficiently pled because he does
28   not identify in the Complaint any specific statute or rule that he believed was being violated.  The

8

1  Court finds the first argument unpersuasive but agrees with the second argument.

2        The Court finds that Plaintiff adequately alleges that he disclosed the practice he believed
3  to be unlawful for the purposes of subdivision (b) based on his allegation that he "frequently
4  expressed disagreement [with the practice of hiring unqualified consultants while pressuring
5  Plaintiff to represent to potential clients that their projects would be staffed by qualified
6  consultants] to Mr. Biswas[,]" who was Plaintiff's supervisor.  Compl. ¶ 21.  Drawing all
7  reasonable inferences in Plaintiff's favor, the Court also finds that Plaintiff adequately alleged that
8  he refused to participate in illegal activity, under subdivision (c), by instructing consultants hired
9  for the Mumbai project who Plaintiff believed were unqualified to disclose their qualifications
10 truthfully to the client when asked.  Compl. ¶ 27.  While not explicitly stated, it is reasonable to
11 infer based on the facts alleged that Plaintiff was expected by Xybion to present the consultants
12 that had been hired for the project as being qualified, consistent with the representations Plaintiff
13 was "pressured" to make in his sales pitches, but he refused to do so.  Compl. ¶ 22.

14       On the other hand, Plaintiff's claim is insufficiently alleged to the extent that he does not
15 identify in the complaint the specific law or rule he believed was being violated by Xybion's
16 practice of promising to staff projects with highly qualified consultants and then hiring unqualified
17 consultants.   "Although there is some split of authority, the majority of courts require plaintiffs
18 bringing section 1102.5(b) claims to allege the specific rule, regulation or statute they reasonably
19 believed had been violated, and the factual basis for their reasonable belief." *La v. San Mateo*
20 *Cnty. Transit Dist*., No. 14-CV-01768-WHO, 2014 WL 4632224, at *5 (N.D. Cal. Sept. 16, 2014)
21 (citing cases).   While Plaintiff identifies in his Opposition brief various state and federal statutes
22 prohibiting false advertising and other deceptive or fraudulent conduct, *see* Opposition at 7, those
23 statutes are not referenced in the Complaint and therefore the Court may not consider them in
24 determining whether Plaintiff's Section 1102.5 claim is adequately alleged.  Accordingly, the
25 Court finds that Plaintiff's claims under Section 1102.5 fail to state a claim under Rule 12(b)(6).
26 For the same reasons, Plaintiff cannot state a claim for wrongful termination in violation of public
27 policy based on his Section 1102.5 claim.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED and all of Plaintiff's claims are dismissed. Because Plaintiff may be able to cure the defects discussed above, Plaintiff is given leave to file an amended complaint, which must be filed by **September 4, 2025.**

**IT IS SO ORDERED.**

Dated: August 4, 2025

_____
JOSEPH C. SPERO
United States Magistrate Judge